UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LEONARD FYOCK, SCOTT HOCHSTETLER, WILLIAM DOUGLAS, DAVID PEARSON, BRAD SEIFERS, and ROD SWANSON,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF SUNNYVALE, THE MAYOR OF SUNNYVALE, ANTHONY SPITALERI, in his official capacity, and THE CHIEF OF THE SUNNYVALE DEPARTMENT OF PUBLIC SAFETY, FRANK GRGURINA, in his official capacity,<br><br>Defendants. | Case No. C-13-5807-RMW<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>**[Re: Docket No. 10]** |

The issue before the court is whether Sunnyvale's ordinance outlawing the possession of firearm magazines having a capacity to accept more than ten rounds should be preliminarily enjoined for infringing individuals' Second Amendment rights. The core of the Second Amendment right to bear arms is self-defense, especially within the home. *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008); *Peruta v. Cnty. of San Diego*, 10-56971, 2014 WL 555862, at *18 (9th Cir. Feb. 13, 2014). With this right in mind, courts have found unconstitutional a law that forbids handguns, *Heller*, 554 U.S. at 635, and a registration scheme that effectively eliminates the average law-abiding citizen's right to bear a gun, *Peruta*, 2014 WL 555862, at *22. The law challenged here

prohibits the possession of certain protected arms anywhere in Sunnyvale. However, the banned arms—magazines having a capacity to accept more than ten rounds—are hardly central to self-defense. The right to possess magazines having a capacity to accept more than ten rounds lies on the periphery of the Second Amendment right, and proscribing such magazines is, at bare minimum, substantially related to an important government interest. No court has yet entered a preliminary injunction against a law criminalizing the possession of magazines having a capacity to accept more than ten rounds, nor has any court yet found that such a law infringes the Second Amendment. Upon the present record, this court declines to be the first. Plaintiffs' Motion for Preliminary Injunction is DENIED.

## I. BACKGROUND

In early 2013, concerned about gun crime, then-current Mayor of Sunnyvale Anthony Spitaleri proposed a gun control ballot initiative called Measure C. Dkt. No. 40, Spitaleri Decl. ¶¶ 4-8, Ex. 1. Measure C was put to a vote and, on November 5, 2013, the citizens of Sunnyvale passed Measure C with 66.55% of the vote. Dkt. No. 42-9, Thompson Decl., Ex. 9, at 3. Measure C was subsequently codified as Sunnyvale Municipal Code § 9.44.030-60.

Plaintiffs Leonard Fyock, William Douglas, David Pearsons, Brad Seifers, and Rod Swanson (collectively "Plaintiffs"), challenge only one provision of Measure C in this case, § 9.44.050. Section 9.44.050 reads:

> No person may possess a large-capacity magazine in the city of Sunnyvale whether assembled or disassembled. For purposes of this section, "large-capacity magazine" means any detachable ammunition feeding device with the capacity to accept more than ten (10) rounds, but shall not be construed to include any of the following:
>
> (1) A feeding device that has been permanently altered so that it cannot accommodate more than ten (10) rounds; or
>
> (2) A .22 caliber tubular ammunition feeding device; or
>
> (3) A tubular magazine that is contained in a lever-action firearm.

Sunnyvale, Cal., Mun. Code § 9.44.050(a). In short, the Sunnyvale ordinance prohibits the possession of magazines having the capacity to accept more than ten rounds. The ordinance carves out nine exceptions:

> (1) Any federal, state, county, or city agency that is charged with the enforcement of any law, for use by agency employees in the discharge of their official duties;
>
> (2) Any government officer, agent, or employee, member of the armed forces of the United States, or peace officer, to the extent that such person is otherwise authorized to possess a large-capacity magazine and does so while acting within the course and scope of his or her duties;
>
> (3) A forensic laboratory or any authorized agent or employee thereof in the course and scope of his or her duties;
>
> (4) Any entity that operates an armored vehicle business pursuant to the laws of the state, and an authorized employee of such entity, while in the course and scope of his or her employment for purposes that pertain to the entity's armored vehicle business;
>
> (5) Any person who has been issued a license or permit by the California Department of Justice pursuant to Penal Code Sections 18900, 26500-26915, 31000, 32315, 32650, 32700-32720, or 33300, when the possession of a large-capacity magazine is in accordance with that license or permit;
>
> (6) A licensed gunsmith for purposes of maintenance, repair or modification of the large-capacity magazine;
>
> (7) Any person who finds a large-capacity magazine, if the person is not prohibited from possessing firearms or ammunition pursuant to federal or state law, and the person possesses the large-capacity magazine no longer than is reasonably necessary to deliver or transport the same to a law enforcement agency;
>
> (8) Any person lawfully in possession of a firearm that the person obtained prior to January 1, 2000, if no magazine that holds fewer than 10 rounds of ammunition is compatible with the firearm and the person possesses the large-capacity magazine solely for use with that firearm.
>
> (9) Any retired peace officer holding a valid, current Carry Concealed Weapons (CCW) permit issued pursuant to California Penal Code. (Ord. 3027-13 § 1).

Sunnyvale, Cal., Mun. Code § 9.44.050(c). The ordinance took effect on December 6, 2013, and it gives persons ninety days to dispossess themselves of their now-prohibited magazines. Thus, to avoid prosecution for their possession of magazines having the capacity to accept more than ten rounds, by March 6, 2014 persons must:

> (1) Remove the large-capacity magazine from the city of Sunnyvale; or
>
> (2) Surrender the large-capacity magazine to the Sunnyvale Department of Public Safety for destruction; or
>
> (3) Lawfully sell or transfer the large-capacity magazine in accordance with Penal Code Section 12020.

ORDER DENYING PRELIM. INJUNCTION
Case No. C-13-5807-RMW
RDS
- 3 -

Sunnyvale, Cal., Mun. Code § 9.44.050(b).

On December 16, 2013, Plaintiffs filed the instant suit against the City of Sunnyvale, Anthony Spitaleri (in his official capacity as Mayor of Sunnyvale), and Frank Grgurina (in his official capacity as Chief of the Sunnyvale Department of Public Safety) (collectively "Sunnyvale) alleging that Sunnyvale Municipal Code § 9.44.050 violates their right to keep and bear arms under the Second Amendment to the United States Constitution. *See* Dkt. No. 1, Complaint. Plaintiffs now bring the present motion to enjoin Sunnyvale "from enforcing Sunnyvale Police Code section 9.44.050 pending resolution of the merits of this case or further order of this Court." Dkt. No. 21, (Proposed) Order Granting Motion for Preliminary Injunction; *see also* Dkt. No. 10, Motion for Preliminary Injunction ("Motion"). Sunnyvale filed an opposition, Dkt. No. 35 ("Opp."), Plaintiffs filed a reply, Dkt. No. 45 ("Reply"), and the motion was argued before the court on February 21, 2014.

## II. ANALYSIS

Preliminary injunctions are intended to "preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). It is an "extraordinary and drastic remedy," requiring the movant to clearly carry the burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A movant must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

The Ninth Circuit has also held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). "Serious questions" refers to questions "which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991).

## A. Likelihood of Success on the Merits

The Second Amendment methodology adopted by the Ninth Circuit "(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013); *see also Peruta v. Cnty. of San Diego*, No. 10-56971, 2014 WL 555862, at *3 (9th Cir. Feb. 13, 2014) ("To resolve the challenge to the D.C. restrictions, the *Heller* majority described and applied a certain methodology: it addressed, first, whether having operable handguns in the home amounted to 'keep[ing] and bear[ing] Arms' within the meaning of the Second Amendment and, next, whether the challenged laws, if they indeed did burden constitutionally protected conduct, 'infringed' the right."). The court now applies that test here.

### 1. Burden on conduct protected by the Second Amendment

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment is "fully applicable to the States" through the Fourteenth Amendment. *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026 (2010). In asking whether the Sunnyvale ordinance burdens conduct protected by the Second Amendment, the court must naturally seek to understand the scope of the Second Amendment's protections. Indeed, "[u]nderstanding the scope of the right is not just necessary, it is key to our analysis." *Peruta*, 2014 WL 555862, at *19. On one extreme, if Sunnyvale's ordinance does not burden conduct protected by the Second Amendment, the law may be upheld without any further inquiry. On the other extreme, the Sunnyvale law may reach so far as to prohibit the exercise of the core Second Amendment right. In that case, "no amount of interest-balancing under a heightened form of means-ends scrutiny can justify" the policy. *Id*.

"*Heller* instructs that text and history are our primary guides in" determining the Second Amendment's scope. *Id*. at *18. The Second Amendment, by its text, "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592. Throughout our nation's history, "the inherent right of self-defense has been central to the Second Amendment right." *Id*. at 628. The strength of this self-defense right is at its height in the home, "where the need

ORDER DENYING PRELIM. INJUNCTION
Case No. C-13-5807-RMW
RDS
- 5 -

for defense of self, family, and property is most acute." *Id*. Still, the right also applies outside the home. *Peruta*, 2014 WL 555862, at *18.

Besides these broad findings, the Second Amendment's history is less useful when confronting the much narrower question of whether a prohibition on magazines having a capacity to accept more than ten rounds falls within the scope of the Second Amendment. The parties apparently agree, as neither has provided the court with any historical sources or argument. Surely the reason is that magazines apparently did not even exist when the Second Amendment was ratified.[1] Despite this, the results of the historical heavy lifting done by the *Heller* and *Peruta* courts clearly illustrate that the Sunnyvale law burdens within the scope of the Second Amendment right. The court therefore sees no use in revisiting that analysis here.

As previously stated, the Second Amendment extends to arms used for self-defense both inside and outside the home. *Heller*, 554 U.S. at 628 (inside the home); *Peruta*, 2014 WL 555862, at *18 (outside the home). Sunnyvale bans the possession of magazines having a capacity to accept more than ten rounds everywhere, so as long as such magazines bear some relation to self-defense, the ordinance burdens conduct protected by the Second Amendment.

Although the extent of the prohibited magazines' relationship to self-defense is questionable, Plaintiffs' evidence indicates that such magazines are chosen for self-defense. Helsley Decl. ¶ 3; Monfort Decl. Ex. B (listing numerous examples of guns having as standard magazines with capacities exceeding ten rounds); Monfort Decl. Ex. C (advertisements and more gun listings). Plaintiffs also submit evidence that firearms with magazines having a capacity to accept more than ten rounds are "highly effective for in-home self-defense." Motion at 4; s*ee, e.g.*, Ayoob Decl. ¶¶ 27-28.

Sunnyvale asserts that magazines having a capacity to accept more than ten rounds are dangerous and unusual, and are thus not protected by the Second Amendment. Indeed, there is a "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554

---

[1] The fact that magazines apparently did not exist when the Second Amendment was ratified is not a reason to find that magazines having a capacity to accept more than ten rounds are not protected by the Second Amendment. As the Supreme Court has held, the argument "that only those arms in existence in the 18th century are protected by the Second Amendment" "border[s] on the frivolous." *Heller*, 554 U.S. at 582. "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id*.

U.S. at 627. To measure whether a weapon is dangerous and unusual, the court looks at whether it is "in common use," or whether such weapons are "typically possessed by law-abiding citizens for lawful purposes." *United States v. Miller*, 307 U.S. 174, 179 (1939); *Heller*, 554 U.S. at 627 ("*Miller* said, as we have explained, that the sorts of weapons protected were those 'in common use at the time.'" (quoting *Miller*, 307 U.S. at 179)); *Heller*, 554 U.S. at 625 ("We therefore read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns.").

The court finds that magazines having a capacity to accept more than ten rounds are in common use, and are therefore not dangerous and unusual. Plaintiffs cite statistics showing that magazines having a capacity to accept more than ten rounds make up approximately 47 percent of all magazines owned. Curcuruto Decl. ¶ 8. Another report indicates that individuals own "millions" of the prohibited magazines, and that sales of pistols—which are more likely than revolvers to take such magazines as standard—have grown substantially at revolvers' expense. Helsey Decl. ¶ 10. Furthermore, while product offerings may not precisely mirror ownership, approximately one-third of the semiautomatic handgun models and two-thirds of the semiautomatic, centerfire rifles listed in *Gun Digest* (a gun model reference work) are typically sold with magazines having a capacity to accept more than ten rounds. Monfort Decl. Ex. B. Both parties admit that reliable data on the number of the banned magazines owned by individuals does not exist. Nevertheless, "it is safe to say that whatever the actual number of such magazines in United States consumers' hands is, it is in the tens-of-millions, even under the most conservative estimates." Curcuruto Decl. ¶ 13.

Sunnyvale refutes Plaintiffs' evidence by arguing that "[t]here is no evidence of 'common use' in California," or Sunnyvale, Opp. at 13, because a combination of federal and state law has proscribed the sale, purchase, and transfer of magazines having a capacity to accept more than ten rounds since 1994. Thompson Decl., Ex. 8, H.R. Rep. 103-439, at 32-33 (1994); Thompson Decl., Ex. 1, Cal. Stats. 1999, ch. 129, §§ 3, 3.5, codified as Cal. Penal Code § 32310. However, Sunnyvale misunderstands the common use test. The Supreme Court did not define the common use test as a local test, but rather evaluated common use as a national test in its historical discussion. *Heller*, 554 U.S. at 621-28. Moreover, it cannot be that common use is measured on anything but a

national scale—otherwise, the scope of individuals' Second Amendment rights as enshrined in the federal Constitution would vary based on location. This result would be wrong: the Second Amendment safeguards individual rights equally throughout the United States.

Sunnyvale also responds that magazines having a capacity to accept more than ten rounds are not commonly used for self-defense. Opp. at 13-15. But here again Sunnyvale misinterprets *Heller*, basing its argument on too literal a reading of the term "use." Second Amendment rights do not depend on how often the magazines are used. Indeed, the standard is whether the prohibited magazines are "typically *possessed* by law-abiding citizens for lawful purposes," not whether the magazines are often *used* for self-defense. *Heller*, 554 U.S. at 625 (emphasis added). As Plaintiffs explain, "[m]ost people will never need to discharge a firearm in self-defense at all." Reply at 8. By invoking the phrase "common use," the Supreme Court simply meant that arms must be commonly kept for lawful self-defense. The fact that few people "will require a particular firearm to effectively defend themselves," Reply at 8, should be celebrated, and not seen as a reason to except magazines having a capacity to accept more than ten rounds from Second Amendment protection. Evidence that such magazines are "typically possessed by law-abiding citizens for lawful purposes" is enough. *Heller*, 554 U.S. at 625. Sunnyvale has thus failed to prove that the banned magazines are not in common use. Therefore, unlike unregistered short-barreled shotguns, which the *Miller* court found to be unprotected by the Second Amendment, magazines having a capacity to accept more than ten rounds are not dangerous and unusual.

Sunnyvale also contends that the prohibited magazines are not "arms" within the meaning of the Second Amendment. This argument is not persuasive. First, while every court that has considered a ban on possession of magazines having a capacity to accept more than ten rounds has upheld the law, no court has found that such magazines do not qualify as "arms" under the Second Amendment. *See Heller v. District of Columbia (Heller II)*, 670 F.3d 1244, 1264 (D.C. Cir. 2011); *San Francisco Veteran Police Officers Ass'n v. City & Cnty. of San Francisco*, C-13-05351 WHA, 2014 WL 644395, at *7 (N.D. Cal. Feb. 19, 2014); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, C-13-291S, 2013 WL 6909955, at *18 (W.D.N.Y. Dec. 31, 2013); *Shew v. Malloy*, C-13-739 AVC, 2014 WL 346859, at *9 (D. Conn. Jan. 30, 2014); *Tardy v. O'Malley*, C-13-2861, TRO

ORDER DENYING PRELIM. INJUNCTION
Case No. C-13-5807-RMW
RDS
- 8 -

Hr'g Tr., at 66-71 (D. Md. Oct. 1, 2013). Second, if Sunnyvale is right that magazines and ammunition are not "arms," any jurisdiction could effectively ban all weapons simply by forbidding magazines and ammunition. This argument's logic would abrogate all Second Amendment protections. Rather, the court finds that the prohibited magazines are "weapons of offence, or armour of defence," as they are integral components to vast categories of guns. *Heller*, 554 U.S. at 581 (quoting 1 Dictionary of the English Language 106 (4th ed.) (reprinted 1978)).

In sum, Sunnyvale's ban on possession of magazines having a capacity to accept more than ten rounds implicates the Second Amendment's protections. The Sunnyvale ordinance forbids possession of such magazines in all locations—in the home and in public—and for all purposes—self-defense or otherwise. The law carves out a number of exceptions, but they are all narrow, and do not apply to the average, law-abiding citizen. Thus the court finds that the Sunnyvale ordinance prohibits average, law-abiding citizens from possessing protected arms that are not dangerous and unusual. As such, Sunnyvale's ban burdens conduct protected by the Second Amendment. In reaching this conclusion, the court does not consider the amount of the burden—this factor is examined below.[2]

### 2. Selecting the level of scrutiny

Some regulations are so burdensome on Second Amendment rights that they would fail any scrutiny test, as was the case in *Heller* and *Peruta*. In *Heller*, the Court reasoned that the law at issue would fail any scrutiny test because "[t]he handgun ban amounts to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society for th[e] lawful purpose [of self-defense]. The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute." *Heller*, 554 U.S. at 628. In *Peruta*, the court confronted a registration scheme that effectively banned the open and concealed carry of handguns to the average, law-abiding citizen. The Ninth Circuit interpreted *Heller* as holding that "[a] law effecting a '*destruction* of the right' rather than merely *burdening* it is, after all, an infringement under any light." *Peruta*, 2014 WL 555862, at *20 (emphasis in original). Because the registration scheme

---

[2] *See infra* Part II.A.2.b.

1  effected a destruction of the Second Amendment right to keep and bear handguns, the laws were *per se* unconstitutional. *Id*. at *22.

"It is the rare law that 'destroys' the right, requiring *Heller*-style per se invalidation." *Id*. at *21. Unlike the laws in *Heller* and *Peruta*, the Sunnyvale ordinance does not effect a "destruction of the right." The Sunnyvale law does not ban all, or even most, magazines. Rather, Sunnyvale merely burdens the Second Amendment right by banning magazines having a capacity to accept more than ten rounds. The Second Amendment likely requires that municipalities permit *some form* of magazines, but Sunnyvale's law is consistent with this requirement. *Id*. at *24 ("But the Second Amendment does require that the states permit *some form* of carry for self-defense outside the home." (emphasis in original)). As such, the Sunnyvale ordinance is not *per se* unconstitutional, and the court must select the appropriate level of scrutiny under which it will analyze the law.

The Ninth Circuit in *Chovan* observed that "the level of scrutiny should depend on (1) 'how close the law comes to the core of the Second Amendment right,' and (2) 'the severity of the law's burden on the right.'" *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011)). The court examines each factor in turn.

**a. How close the law comes to the core of the Second Amendment right**

As outlined earlier, the Second Amendment "right is, *and has always been,* oriented to the end of self-defense." *Peruta*, 2014 WL 555862, at *8 (emphasis in original). Upon review of the evidence, the court finds that the Sunnyvale ordinance comes relatively near the core of the Second Amendment right.

Plaintiffs present a wealth of evidence that magazines having a capacity to accept more than ten rounds are often used with relatively ordinary handguns that individuals use for self-defense both inside and outside the home. The court cited some of this evidence in the context of its determination that the banned magazines are in common use. Curcuruto Decl. ¶¶ 8, 13; Helsey Decl. ¶ 10; Monfort Decl. Ex. B. In addition, Plaintiffs' evidence suggests that many handguns kept for self-defense come standard with magazines having the prohibited capacity. Helsley Decl. ¶ 3; Monfort Decl. Ex. B (listing numerous examples of guns having as standard magazines with capacities exceeding ten rounds); Monfort Decl. Ex. C (advertisements and more gun listings). This

fact also holds for pistols and rifles. Monfort Decl. Ex. B; Monfort Decl. Ex. C. Each of the individual plaintiffs indicate that they keep the banned magazines for self-defense. Fyock Decl. ¶¶ 5-7; Douglas Decl. ¶¶ 5-7; Pearson Decl. ¶¶ 5-7; Seifers Decl. ¶¶ 5-7; Swanson Decl. ¶¶ 5-7. The evidence also shows that the American public in general prefers many of the firearms that take magazines having a capacity to accept more than ten rounds as standard. Curcuruto Decl. ¶¶ 8, 13; Helsey Decl. ¶ 10; Monfort Decl. Ex. B.

Sunnyvale counters that the connection between the forbidden magazines and their use for self-defense is not strong. However, evidence of use is of limited relevance to determining the level of scrutiny to apply. To understand whether the law approaches core Second Amendment conduct, the court must only consider the preferences of average, law-abiding citizens. *Heller*, 554 U.S. at 625. At least in this instance, the court will not judge whether the public's firearm choices are often used for self-defense, or even whether they are effective for self-defense—the firearms must merely be preferred. Therefore, the court concludes that the Sunnyvale law burdens conduct near the core of the Second Amendment right.

### b. Severity of the burden

Although this conclusion points to strict scrutiny as the proper standard for this case, *Chovan* directs courts to also consider the severity of the burden on the Second Amendment right. *Chovan*, 735 F.3d at 1138. Here, the Sunnyvale law's burden on the Second Amendment right is light. Magazines having a capacity to accept more than ten rounds are hardly crucial for citizens to exercise their right to bear arms. The Sunnyvale ordinance does not place any restrictions on smaller magazines, which are the most popular magazines for self-defense. Curcuruto Decl. ¶ 8 (Plaintiffs' expert stating that 47 percent of all magazines owned are capable of holding more than ten rounds, meaning that 53 percent of all magazines are not capable of holding more than ten rounds); *see also* Yurgealitis Decl. ¶ 6. Individuals have countless other handgun and magazine options to exercise their Second Amendment rights. *See, e.g.*, Monfort Decl. Ex. B, C (listing numerous firearms that take magazines that accept ten or fewer rounds as standard). The evidence thus establishes that the banned magazines make up just one subset of magazines, which interoperate only with a subset of

all firearms. Accordingly, a prohibition on possession of magazines having a capacity to accept more than ten rounds applies only the most minor burden on the Second Amendment.

### c. Selecting intermediate scrutiny

Considering both how close the Sunnyvale law comes to the core of the Second Amendment right and the law's burden on that right, the court finds that intermediate scrutiny is appropriate. The law bans possession of magazines having a capacity to accept more than ten rounds in all places, at all times, and for all purposes, thus approaching the core of the Second Amendment's protections. However, the ordinance's burden on the Second Amendment right is light because it only bans a less-preferred subset of magazines that cannot have been legally sold in California for twenty years. The conclusion that intermediate scrutiny applies is in accord with every other court that has considered a similar ban on magazines having a capacity to accept more than ten rounds. *See Heller II*, 670 F.3d at 1261-62 (D.C. Cir. 2011); *San Francisco Veteran Police*, 2014 WL 644395, at *5 (N.D. Cal. Feb. 19, 2014); *New York State Rifle & Pistol Ass'n*, 2013 WL 6909955, at *12-13; *Shew v. Malloy*, 2014 WL 346859, at *6-7. Further, in most Second Amendment cases, courts tend to reject strict scrutiny and apply intermediate scrutiny. *See, e.g.*, *Woollard v. Gallagher*, 712 F.3d 865, 876 (4th Cir. 2013); *U.S. v. Masciandaro*, 638 F.3d 458, 474 (4th Cir. 2011); *United States v. Marzzarella*, 614 F.3d 85, 96 (3d Cir. 2010); *U.S. v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *U.S. v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010); *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012); *U.S. v. Walker*, 709 F. Supp. 2d 460, 466 (E.D. Va. 2010); *U.S. v. Lahey*, No. 10-CR-765 KMK, 2013 WL 4792852, at *15 (S.D.N.Y. Aug. 8, 2013); *see also U.S. v. Marzzarella*, 595 F. Supp. 2d 596, 604 (W.D. Pa. 2009) ("the Court's willingness to presume the validity of several types of gun regulations is arguably inconsistent with the adoption of a strict scrutiny standard of review"); Thompson Decl., Ex. 28, Dennis A. Henigan, *The Heller Paradox*, 56 UCLA L. Rev. 1171, 1197-98 (2009) ("the *Heller* majority thus implicitly rejected strict scrutiny"). Accordingly, the court applies intermediate scrutiny.

### 3. Applying Intermediate Scrutiny

Intermediate scrutiny "require[s] (1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted

objective." *Chovan*, 735 F.3d at 1139 (citing *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010)). Stated differently, "a regulation that burdens a plaintiff's Second Amendment rights 'passes constitutional muster if it is substantially related to the achievement of an important government interest.'" *Kwong v. Bloomberg*, 723 F.3d 160, 168 (2d Cir. 2013) (quoting *Kachalsky*, 701 F.3d at 96). Because the Sunnyvale law is substantially related to an important government objective and is reasonably tailored to the objective, the court finds that the challenged ordinance meets the intermediate scrutiny test.

Public safety and crime prevention are compelling government interests. *U.S. v. Salerno*, 481 U.S. 739, 748-50 (1987) (finding not only that public safety and crime prevention are compelling government interests, but also even that "the government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest"); *Schall v. Martin*, 467 U.S. 253, 264 (1984) ("the 'legitimate and compelling state interest' in protecting the community from crime cannot be doubted"). The parties, however, hotly dispute what effect the Sunnyvale ordinance will have on public safety. At the outset, the court notes that its judicial role—especially in this Second Amendment context—is to apply the law and not to make policy decisions. *See, e.g.*, *Heller*, 554 U.S. at 634 ("A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all."); *McDonald*, 130 S. Ct. at 3050 (2010) (Second Amendment analysis does not "require judges to assess the costs and benefits of firearms restrictions and thus to make difficult empirical judgments in an area in which they lack expertise."). As a result, irrespective of how Sunnyvale's law impacts public safety, the means-end scrutiny test must concentrate more on the relationship between the challenged ordinance and public safety than on the exact effect the law may have. Otherwise, means-end scrutiny analyses are reduced to courts making policy judgments better left to legislatures and the people.

As stated in Measure C itself, prevention of gun violence lies at the heart of the Sunnyvale ordinance. *See* Spitaleri Decl. Exh. A at 1 ("the People of Sunnyvale find that the violence and harm caused by and resulting from both the intentional and accidental misuse of guns constitutes a clear and present danger to the populace, and find that sensible gun safety measures provide some relief from that danger and are of benefit to the entire community"). Sunnyvale submits substantial

evidence that a ban on the possession of magazines having a capacity to accept more than ten rounds may reduce the threat of gun violence. For example, Professor Koper opines in his declaration that the Sunnyvale law "has the potential to (1) reduce the number of crimes committed with [large capacity magazines]; (2) reduce the number of shots fired in gun crimes; (3) reduce the number of gunshot victims in such crimes; (4) reduce the number of wounds per gunshot victim; (5) reduce the lethality of gunshot injuries when they do occur; and (6) reduce the substantial societal costs that flow from shootings." Koper Decl. ¶ 57. Professor Koper, relying on a study assessing the 1994 federal assault weapons ban, also states that magazines having a capacity to accept more than ten rounds "are particularly dangerous because they facilitate the rapid firing of high numbers of rounds. This increased firing capacity thereby potentially increases injuries and deaths from gun violence." *Id*. ¶ 7. Studies also show that the banned magazines are used in 31% to 41% of gun murders of police. *Id*. ¶ 18.

Plaintiffs respond that Sunnyvale's ordinance will have little effect because criminal users of firearms will not comply with the law. Kleck Decl. ¶¶ 28-29. However, Sunnyvale provides data showing that, among 69 mass shootings, 115 of 153—or 75%—of the guns used were obtained legally. Allen Decl. ¶ 18. Professor Koper refutes this argument with evidence that prohibitions on magazines having a capacity to accept more than ten rounds reduce the availability of such magazines to criminals. *Id*. ¶ 47-52. In that sense, even if the Sunnyvale law has minimal compliance among potential criminal firearm users and is difficult to enforce by police, it may still reduce gun crime by restricting the banned magazines' availability.

Plaintiffs also argue that Sunnyvale's ban will have a negative impact on public safety because it imposes magazine size limits on those acting in self-defense. This evidence is relatively unpersuasive for three reasons. First, studies of the NRA Institute for Legislative Action database demonstrates that individuals acting in self-defense fire 2.1-2.2 shots on average. Allen Decl. ¶¶ 6-9. It is rare that anyone will need to fire more than ten rounds in self-defense. *Id*. Second, although Plaintiffs provide several anecdotes of instances when having a magazine with the capacity to accept more than ten rounds was necessary for self-defense, Plaintiffs do not supply any quantitative data showing that banning such magazines would negatively impact public safety. *See* Ayoob Decl.

¶¶ 5-16. The fact that Plaintiffs only present anecdotal examples rather than quantitative studies suggests that in only very rare circumstances is it necessary to possess a larger magazine in self-defense.

Finally, Plaintiffs' evidence does little to show that the Sunnyvale ordinance is not substantially related to the achievement of an important government interest. Means-end scrutiny is meant, *inter alia*, to subject laws to additional examination when there is a fear that they may trample on individual rights. *See Heller*, 554 U.S. at 634-35. Here, Plaintiffs are concerned that the Sunnyvale law infringes their Second Amendment rights, and Sunnyvale argues that its citizens voted for the law out of concern for public safety. Whether or not the law is ultimately effective is yet to be seen. But for now, Sunnyvale has submitted pages of credible evidence, from study data to expert testimony to the opinions of Sunnyvale public officials, indicating that the Sunnyvale ordinance is substantially related to the compelling government interest in public safety. While Plaintiffs present evidence that the law will not be successful, the court cannot properly resolve that question. The court is persuaded that Sunnyvale residents enacted Measure C out of a genuine concern for public safety, and that the law, with its many exceptions and narrow focus on just those magazines having a capacity to accept more than ten rounds, is reasonably tailored to the asserted objective of protecting the public from gun violence.

### 4. Summary: Plaintiffs are not likely to succeed on the merits

The court concludes that Plaintiffs are not likely to succeed on the merits. Although Plaintiffs demonstrate that the Sunnyvale ordinance imposes some burden on Second Amendment rights, that burden is relatively light. The Sunnyvale law passes intermediate scrutiny, as the court—without making a determination as to the law's likely efficacy—credits Sunnyvale's voluminous evidence that the ordinance is substantially tailored to the compelling government interest of public safety. This determination is based on the record as it stands at this early preliminary injunction stage of the case.[3] At this time, the court only holds that, upon this surely incomplete record, Plaintiffs have failed to prove that they are likely to succeed on the merits.[4]

---

[3] In addition to their reply brief, Plaintiffs raise 24 evidentiary objections in a separate fifteen-page filing. Dkt. No. 45-1. Sunnyvale responds by filing separate objections of their own to Plaintiffs' reply evidence. Dkt. No. 48. Local Rule 7-3(c) requires that Plaintiffs file their evidentiary objections "within the reply brief or memorandum." Moreover, a motion for preliminary injunction

## B. Irreparable Harm

Irreparable harm is presumed if plaintiffs are likely to succeed on the merits because a deprivation of constitutional rights always constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373; *Ezell v. Chicago*, 651 F.3d 684, 699-700 (7th Cir. 2011). Here, however, the court does not find that enforcement of the Sunnyvale ordinance would likely infringe Plaintiffs' Second Amendment rights. As Plaintiffs base their entire irreparable harm argument on irreparable harm being presumed if they are likely to succeed on the merits, Plaintiffs fail to demonstrate that enforcement of the Sunnyvale law will cause them irreparable harm. The court notes that individuals who turn their prohibited magazines in to the Sunnyvale Department of Public Safety would likely suffer irreparable harm from the subsequent destruction of their property. This argument is more properly analyzed under the balance of the hardships factor, and the court will consider it there.

## C. Balance of the Hardships

Plaintiffs must demonstrate that the balance of the equities tips in their favor. *Winter*, 555 U.S. at 20. Plaintiffs contend that their constitutional rights will be infringed should an injunction fail to issue. Constitutional rights, by definition, are of paramount importance, so this concern must be taken seriously. However, because Plaintiffs have failed to show a likelihood of success on the merits, it is unlikely that enforcement of Sunnyvale's ordinance will infringe their constitutional rights.

Plaintiffs also argue that they will suffer hardship because they will have to store their banned magazines outside of Sunnyvale, modify them, or turn them over to the Sunnyvale

---

must be supported by evidence that goes beyond the unverified allegations of the pleadings, but "the district court may rely on otherwise inadmissible evidence, including hearsay evidence." *Fid. Nat'l Title Ins. Co. v. Castle*, 2011 WL 5882878, at *3 (N.D. Cal. Nov. 23, 2011); *Gonzalez v. Zika*, 2012 WL 4466584, at *1 (N.D. Cal. Sep. 26, 2012); *Murphy v. Bank of N.Y. Mellon*, 2013 WL 3574628, at *3 (N.D. Cal. July 12, 2013). Thus, the parties' requests to strike various pieces of evidence are DENIED.

[4] Note that this finding accords with every other case to examine a ban on possession of magazines having a capacity to accept more than ten rounds. *See Heller v. District of Columbia (Heller II)*, 670 F.3d 1244, 1264 (D.C. Cir. 2011); *San Francisco Veteran Police Officers Ass'n v. City & Cnty. of San Francisco*, C-13-05351 WHA, 2014 WL 644395, at *7 (N.D. Cal. Feb. 19, 2014); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, C-13-291S, 2013 WL 6909955, at *18 (W.D.N.Y. Dec. 31, 2013); *Shew v. Malloy*, C-13-739 AVC, 2014 WL 346859, at *9 (D. Conn. Jan. 30, 2014); *Tardy v. O'Malley*, C-13-2861, TRO Hr'g Tr., at 66-71 (D. Md. Oct. 1, 2013).

Department of Public Safety for destruction. The forced destruction of their property is surely a hardship to Plaintiffs, but it is also one that must be weighed against Sunnyvale's public safety concerns, as reflected in the evidence submitted by Sunnyvale to this court and the nearly two-thirds vote by Sunnyvale residents to pass the challenged ordinance.

As discussed above, Sunnyvale has a compelling interest in the protection of public safety. *Salerno*, 481 U.S. at 748-50; *Schall*, 467 U.S. at 264. The court has already found that the challenged law is, at minimum, substantially related to this interest. The purpose of the restriction on the possession of magazines having a capacity to accept more than ten rounds is to reduce their availability for criminal use. Although the likelihood that the ordinance will prevent gun violence between March 6, 2014 and whenever this case is finally resolved is hotly debated, the risk that a major gun-related tragedy would occur is enough to at least balance out the inconvenience to Plaintiffs in disposing of their now-banned magazines. Therefore, the court concludes that the balance of the hardships factor is neutral.

A corollary to this finding is that an injunction cannot issue based on the "serious questions" doctrine. As noted earlier, Ninth Circuit law allows a court to grant a preliminary injunction if the plaintiff raises "serious questions going to the merits" and the balance of the equities tip sharply in the plaintiff's favor. *Alliance for the Wild Rockies*, 632 F.3d at 1132. Here, because the court finds that the balance of the hardships is neutral, the court need not address whether Plaintiffs have raised "serious questions going to the merits."

### D. Public Interest

As the parties focused their briefing and argument on the likelihood of success on the merits, they submitted little evidence and argument as to the public interest. Nonetheless, the court considers this factor and finds it to favor Sunnyvale. To some extent, the public interest analysis mirrors the balance of the hardships. Whereas on the balance of the hardships the court examined only hardship to Plaintiffs, because constitutional rights are at issue, any infringement on the Second Amendment naturally harms the public. Likewise, because gun violence threatens the public at large, the court balances the public's interest in preserving its constitutional rights against the public's interest in preventing gun violence. Again, due to Plaintiffs' failure to prove a likelihood of

success on the merits, it is unlikely that the Sunnyvale ordinance infringes the public's constitutional rights, so the court gives this consideration less weight.

Moreover, two other aspects of the Sunnyvale law cause the public interest factor to weigh against an injunction. First, the Sunnyvale ordinance was enacted by the will of the people in a vote of 66 percent in favor of Measure C. In so doing, the people of Sunnyvale determined that the ban on magazines having a capacity to accept more than ten rounds would promote public safety. There exists a public interest in deferring to this determination, and in promoting Sunnyvale's decision to engage in direct democracy. Of course, the court recognizes that constitutional rights exist in large part to protect the minority against tyranny by the majority, so this consideration does not weigh heavily. Further, if the Court found that Plaintiffs were likely to succeed in proving that the Sunnyvale ordinance infringes the Second Amendment, the Court would necessarily invoke the Second Amendment to protect the minority against the ordinance's infringement on their rights. In that case, the consideration that a 66 percent majority passed the law would not weigh against an injunction. In this circumstance, however, the fact that the great majority of Sunnyvale voters favor the ordinance supports denial of the preliminary injunction.

Finally, the public has an interest in protecting the safety of its police officers. The court credits Sunnyvale's evidence that magazines having a capacity to accept more than ten rounds present special danger to law enforcement officers. Grgurina Decl. ¶ 4; Koper Decl. ¶ 18. Sunnyvale itself has experienced the danger presented to police and the public by a criminal suspect armed with such magazines. In 2011, Shareef Allman killed three co-workers and wounded six others in a shooting incident beginning in Cupertino, California, and ending in Sunnyvale. Grgurina Decl. ¶ 4. Allman, who was in possession of several weapons, including those with magazines having a capacity to accept more than ten rounds, was killed by police in Sunnyvale after a 22 hour manhunt. *Id*. Considering a similar law, another court in this district determined that the "interest in protecting the lives and safety of [ ] police officers is also central to the public interest." *San Francisco Veteran Police*, 2014 WL 644395, at *7. This court credits similar evidence here and finds that the public interest factor counsels against issuance of a preliminary injunction.

ORDER DENYING PRELIM. INJUNCTION
Case No. C-13-5807-RMW
RDS
- 18 -

**E. Weighing the Equities**

In conclusion, the court holds that Plaintiffs are not likely to succeed on the merits, that Plaintiffs failed to prove that they would suffer irreparable harm absent a preliminary injunction, that the balance of the hardships is neutral, and that the public interest favors Sunnyvale. The equities, therefore, weigh sharply against granting Plaintiffs' motion for a preliminary injunction. As the balance of the hardships is neutral, even if the court were to find that Plaintiffs raised "serious questions going to the merits"—a questionable proposition, but one that the court does not reach here—the court could not grant a preliminary injunction on this alternative basis. Accordingly, the equities clearly favor denial of Plaintiffs' motion for a preliminary injunction.

### III. ORDER

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction is DENIED.[5]

Dated: March 5, 2014

RONALD M. WHYTE
United States District Judge

---

[5] Plaintiffs' Administrative Motion for an Expedited Ruling on Plaintiffs' Motion for Preliminary Injunction is DENIED as moot. *See* Dkt. No. 31.